UNITED STATES of America

v.

James HILLARD, Harold Hillard, Robert Allen, Sam Hillard, Richard Lewis, John Rowe, Henry McCay, Patricia Wells, Victor Berry, Sterling Currie, Michael King and John Doe, Defendants.

No. S82 Cr. 143(MEL).

United States District Court, S. D. New York.

June 10, 1982.

---

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff; Mary Lee Warren, Asst. U. S. Atty., New York City, of counsel.

David Breitbart, New York City, for defendant James Hillard.

Robert Koppelman, New York City, for defendant Harold Hillard.

Maurice Sieradzki, New York City, for defendant Robert Allen.

Edward M. Chikofsky, New York City, for defendant Sam Hillard.

John Curley, The Legal Aid Society, New York City, for defendant Richard Lewis.

Barry Fallick, New York City, for defendant John Rowe.

Anthony Ferrara, New York City, for defendant Henry McCay.

David Gendelman, New York City, for defendant Patricia Wells.

Marino & Veneziano, New York City, for defendants Victor Berry, Sterling Currie and Michael King.

LASKER, District Judge.

Defendants are charged with conspiring to distribute and distributing heroin. They move for suppression of evidence obtained pursuant to warrants authorizing electronic eavesdropping and of evidence obtained pursuant to various physical searches authorized by warrant. In addition, Harold Hillard moves to suppress evidence obtained from a warrantless search of a postal locker used by him in his employment at the United States Postal Service.[1]

## I.

On September 28, 1981, Judge John C. Demos of the Superior Court of New Jersey, Union County, signed a warrant authorizing the Union County Prosecutor's Office and the Drug Enforcement Administration of the Department of Justice (the "DEA") to intercept telephonic conversations of James Hillard, Harold Hillard and others over a telephone listed in the name of James Hillard at his New Jersey residence. The warrant was based on the affidavit of Captain Richard J. Mason of the Union County Prosecutor's Office ("the New Jersey affidavit"). This wiretap was voluntarily discontinued on October 2, 1981. On December 7, 1981, Judge Lee P. Gagliardi of this court signed another warrant authorizing Special Agents of DEA to intercept telephone communications of James Hillard, Harold Hillard and others over a telephone at Apartment 20–J, 1020 Grand Concourse,

Bronx, New York, leased to James Hillard. This warrant was based on the affidavit of Special Agent Robert Stia of the DEA ("the federal affidavit") which repeated much of the same information as had been contained in the New Jersey affidavit, with the notable addition of transcripts of conversations intercepted pursuant to the earlier wiretap. On January 6, 1982, Judge Henry F. Werker of this court authorized an extension of the wiretap order and additionally authorized interception of oral communications within the apartment (a "bug"). On February 3, 1982, Judge Werker authorized a thirty day extension of the eavesdropping authorization. On February 11, 1982, several of the defendants in this case were arrested. On February 11 and 16, 1982, pursuant to search warrants issued by Magistrate Ruth V. Washington of this court, various residences of the defendants and other locations were searched. The search warrants were based on essentially the same information as was presented in the applications for the wiretaps, with the addition of transcripts of conversations intercepted pursuant to the wiretap warrants. In addition, a warrantless search of Harold Hillard's postal locker was conducted on February 11, 1982, following Harold Hillard's arrest.

The defendants contend that the state affidavit was insufficient to establish the requisite probable cause to support the issuance of the New Jersey wiretap warrant and that the excerpts from the New Jersey wiretap therefore are tainted and cannot be relied on to support the federal wiretap application. Since except for the excerpts from the New Jersey wiretap the federal application contains essentially the same information, defendants contend that the federal affidavit was also insufficient. The government has stated that it does not intend to introduce any state interceptions in its direct case (Government's Brief in Oppo-

---

1. Decision on Harold Hillard's motion to suppress evidence seized from his postal locker is reserved pending a hearing on the issues whether Hillard had a reasonable expectation of privacy in the locker in light of the provision in the collective bargaining agreement between the Postal Service and the union representing Hillard that the locker could be searched in specified circumstances and, if not, whether the fact that a separate package in the locker was searched nevertheless violated Hillard's Fourth Amendment rights.

sition to Omnibus Pretrial Motions, p. 6) but contends that, in any event, both the state application and the federal application, with or without the state excerpts, support a determination that probable cause existed to authorize the various intrusions.

## II.

The New Jersey affidavit describes the results of investigations conducted by the White Plains New York Police Department, the DEA and the New York City Police Department into the activities of James Hillard and others they suspected of participating in heroin trafficking. The investigations consisted primarily of physical surveillance, interviews with confidential informants, interviews with landlords and building managers, and a pen register and toll analysis of James Hillard's telephone at a former residence.

The salient information contained in the New Jersey application can be summarized as follows. First, several confidential informants told the investigators that James Hillard was the head of a major heroin distribution network. For example, informants A and B stated in February, 1980 that James Hillard was then the head of a multimillion dollar heroin distribution operation centered in the 143rd and 144th Street areas of Harlem in which he distributed one kilogram weekly through 50 to 100 distributors. According to A and B, the operation was known as "Black Sunday" because the street dealers bragged that it would be a black Sunday when they don't have heroin for sale. Informant C gave similar information in February and March, 1981, adding that James Hillard received the heroin from Leon and David Richmond, that Hillard supplied "Fox" with heroin at a store at West 143rd Street and Seventh Avenue, and that James Hillard's brother controlled heroin distribution in the area of West 127th Street and Eighth Avenue. In August, 1981, informant F told investigators that Hillard was then distributing one and one-half to two kilograms of heroin weekly, that "Fox" was a top agent for James Hillard, distributing about twenty bundles a

day from a store at West 143rd Street and Seventh Avenue, that the heroin was known as "Black Sunday", and that Victor Berry, James King and Sterling Currie were customers of Hillard. Another confidential informant, Informant E, identified as an employee at Executive Towers at 1020 Grand Concourse, told investigators that there was no Ann Waters, in whose name the telephone at 1020 Grand Concourse, Apt. 20–J was listed, living in the apartment. Informant E also told investigators that he had seen James Hillard operating a number of vehicles, had on one occasion observed James Hillard leave his car parked in the garage with the door ajar and a pile of currency on the floor of the car, that for months (since Hillard moved to White Plains) the apartment had been empty of furniture, although still used by Hillard and others, that Victor Berry and Harold Hillard often visited the apartment and that the apartment was equipped with three pick-proof locks in addition to the two locks already on the door.

In addition, on February 28, 1980, investigators arranged for A and B to attempt to make a controlled purchase from James Hillard and, after giving the informants money, the investigators observed them meet with one Paul Zigler, who then left the area and met with James Hillard, and returned to A and B. A and B then returned shortly thereafter with a bundle of envelopes containing heroin. On February 21, 1981, Informant D contacted the investigators and stated that he or she had just purchased heroin from James Hillard, which the informant turned over to the investigators. Informant F told investigators on March 24, 1981, that earlier that day James Hillard had been distributing heroin. Informant F agreed to approach Victor Berry and offer "cut," the material mixed with heroin before street sale to increase volume, for sale under the surveillance of the investigators, who planned to put tracers in the material. F approached Berry and Mike King, who the informant stated declined the offer stating that they had all the cut they needed and were getting a package together. The affidavit states that Informants A, B,

and C in the past gave information leading to the arrest and conviction of various persons, and that Informants D, E, and F had earlier given information which was independently corroborated.

In addition to the informant information, the investigators conducted extensive physical surveillance and investigation into rentals, apartment leases and the like. These investigations revealed that James Hillard often met with known drug violators, that he on occasion went into a building or a meeting empty-handed but emerged carrying a gym bag or package, that he did not apparently have legitimate employment and falsified applications for apartments as to his employment and his income, that he and those around him made unusually large cash expenditures, including the purchase in cash of a car for $10,000, that James Hillard drove several luxury cars registered in the names of his brothers, and appeared on the leasing agreements for several other cars, that James Hillard paid rent on three different apartments, often in cash, and that those in contact with James Hillard were also financially extravagant with either no apparent source of legitimate income or beyond their legitimate source of income. The affidavit also states that on occasion Hillard and others in contact with him apparently became aware of the surveillance of them and took evasive actions.

Finally, a pen register and toll analysis of James Hillard's telephone at his White Plains apartment revealed that various calls were made to and received from persons suspected of dealing in heroin or who had in the past been convicted of dealing in heroin. In addition, it was discovered that numerous collect calls from pay phones located within the area which investigators believed was covered by the Black Sunday operation were accepted at Hillard's telephone.

### III.

Defendants contend that the affidavit is insufficient to establish probable cause for believing that James Hillard or the other targets of the wiretap warrant were engaged in the distribution of heroin or that Hillard's telephone was used for that purpose. First, the defendants argue that much of the affidavit establishes merely that Hillard talked with known or suspected dealers in heroin, an insufficient basis upon which to find probable cause that Hillard himself was engaged in heroin trafficking. Second, defendants press the point that almost all of the informant information in the affidavit is of no value because it consists of conclusory statements that Hillard is the head of a major heroin distribution ring in a particular area and others aid him. According to defendants, relying on *Aguillar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the informant information lacks the requisite factual basis upon which the informants' information was based, and therefore is the equivalent of generalized rumor or gossip about Hillard and his associates. Third, defendants contend that Informant D's assertion that he bought heroin from Hillard in February, 1981, should not have been accorded weight because the informant's reliability was based on the statement that he had given information in the past that had been corroborated, rather than on his having given information leading to arrests and convictions, and because there were no corroborative details provided as to the informant's statement that he had just made a purchase of heroin from James Hillard. Finally, defendants argue that the "controlled buy" by Informants A and B in February, 1980, purportedly involving Hillard should not have been granted weight because the information was stale and therefore provided no basis for concluding that Hillard's telephone was being used for narcotics trafficking at the time of the warrant, the surveillance of the meeting between Hillard and Zigler did not reveal any package passing between them, there was no statement of the time elapsed between Zigler's contact with Hillard and his return to the informants with the heroin, and no factual basis was presented for the informants' assertion that Zigler obtained the heroin from Hillard.

The government responds that a wiretap application affidavit must be judged as a whole and that, while separate items taken in isolation may not support an inference of criminal activity, those facts, when viewed in relation to the rest of the information in the affidavit, do support the determination of probable cause. With respect to the information obtained from confidential informants, the government argues that the informants' reliability is demonstrated by the statements that they had given information leading to arrests or convictions in the past or that they had given information which was independently corroborated. The government further contends that the factual basis of the informants' information need not have been provided because the warrant here did not depend solely upon the informants' tips and that, in any event, the informants' personal knowledge is confirmed within the affidavit by statements that the informants' observed various meetings, or had earlier told the investigators of their plans. In addition, the government maintains that each of the informants' tips is corroborated by reports of other informants or by surveillance and inquiry by the investigators. The government offers by way of example the fact that three different informants named Victor Berry as a member of the "Black Sunday" distribution operation, the investigators saw James Hillard meet with Berry, and the investigators learned from an employee at 1020 Grand Concourse that Berry was a frequent visitor to the apartment leased by James Hillard. Moreover, the government emphasizes that the actual purchases of heroin from James Hillard and the negotiation over the sale of a cutting agent with Victor Berry corroborate the more general assertions by the informants. The government takes the po-

sition that the evidence of purchases from Hillard does not suffer from staleness because more recent information confirms the protracted and continuing nature of the heroin operation. The government also notes that, besides the informant information, the affidavit contains the results of surveillance, telephone pen registers and a toll analysis, revealing Hillard and his associates in a series of meetings and calls with known or suspected heroin dealers, spending enormous sums of cash, attempting to avoid surveillance, and on occasion transferring packages. While acknowledging that mere association with known or suspected drug dealers, without more, is insufficient to support probable cause, the government argues that such association is a factor which may, and in this case does, support a finding of probable cause.[2]

## IV.

Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et* seq., before a court may order the interception of wire and oral communications, it must determine that

"(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communica-

---

**2.** The government also contends that many of the defendants do not have standing with respect to the New Jersey wiretap because standing is limited to an "aggrieved person" who was intercepted or against whom the surveillance was directed under 18 U.S.C. § 2510(11); N.J.S. 156A–2(k) However, it is clear at the least that James and Harold Hillard have standing to challenge the New Jersey wiretap and that they and other defendants have standing

to challenge the federal wiretap. In light of our determination that both the New Jersey affidavit, and the federal affidavit without the intercepted communication, establish probable cause for the challenged intrusions, we need not reach the issue whether defendants other than James and Harold Hillard have standing to challenge the inclusion of excerpts from the New Jersey wiretap.

tions are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." 18 U.S.C. § 2518(3).[3]

The statute further provides for suppression of unlawfully intercepted communications. 18 U.S.C. § 2518(10). As in the case of other types of search warrants, in determining the sufficiency of the affidavits supporting the wiretap application, the affidavits in support of the warrant must be viewed as a whole and "in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *United States v. Kahan*, 572 F.2d 923, 929 (2d Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1978). They must establish that the probable cause needed to validate the issuance of a warrant exists at the time of the issuance of the authorization for the wiretap. *United States v. Martino*, 664 F.2d 860, 866 (2d Cir. 1981). Finally, when an affidavit relies on informants' statements to establish probable cause, it must set forth the underlying circumstances forming the basis for the assertion of illegal activity, and it must state facts giving some assurance that the informant is a reliable person. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 837 (1969); *Aguillar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

█ Applying these principles to the case at bar, we conclude that the New Jersey affidavit established the requisite probable cause to believe that James Hillard and others were involved in a heroin distribution conspiracy and used Hillard's telephone in their illegal activities. It should be noted at the outset, however, that defendants are correct that much of the confidential informant information contained in the affidavit consists merely of conclusory statements that Hillard is the head of a major heroin distribution conspiracy and that others

work for him. Were this the sole information presented in the affidavit, there would be serious doubt whether, under the *Aguillar-Spinelli* standards, the affidavit established the requisite probable cause.

█ While the second prong of the test for informant information, the assertion of facts giving some assurance that the informant is a reliable person, was satisfied with respect to each of the informants by the recitals of past information which either led to arrests and convictions or was independently corroborated, *see United States v. Sultan*, 463 F.2d 1066, 1069 (2d Cir. 1972), the first prong of the test, the underlying circumstances of the informants' knowledge, was not satisfied with respect to a number of the informants' statements contained in the affidavit. The government contends that the conclusory statements contained in the affidavit satisfy the *Aguillar-Spinelli* standards because they were corroborated by the statements of other informants and the observations of the investigators. The cases cited by the government, however, relate to the requirement that the informant be reliable, not to the necessity that the factual basis for the informants conclusions be set forth. *See, e.g., United States v. Perry*, 643 F.2d 38, 50 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *United States v. Sultan, supra* at 1069; *United States v. Esposito*, 423 F.Supp. 908, 911 (S.D.N.Y. 1976). Regardless of the general reliability of an informant, when the affidavit in support of a warrant application fails to set forth the factual basis for the informant's conclusions, the information provided by the informant cannot by itself establish the requisite probable cause. *United States v. Karathanos*, 531 F.2d 26 (2d Cir. 1976). That is, the affidavit must establish "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Id.* at 31, *quoting Spinelli v. United States, supra* 393 U.S. at 416, 89

---

**3.** The relevant requirements under the New Jersey statute are the same. *See* N.J.S. 2A:156A-1 *et seq.*

S.Ct. at 589. The statements in the affidavit that James Hillard is a major heroin distributor in particular neighborhoods and that he works with specified persons do not contain any factual basis for underlying the informants conclusions, nor do they describe the alleged illegal activity in sufficient detail to assure judicial authority that they are more than mere rumor.

Nevertheless, while the informants' conclusory statements concerning Hillard's alleged operation do not, standing alone, suffice to establish probable cause for the wiretap, probable cause was established here by further informant information and by reference to the independent investigation of law enforcement authorities.

■ Specifically, the February 1981 purchase of heroin from Hillard by Informant D and the earlier indirect purchase from Hillard by Informants A and B at least confirm that Hillard was in fact involved to some degree in heroin trafficking. Defendants' contention that the information as to the sale by Informant D is not entitled to weight because no corroborative details were provided is without merit. While it is true that the details of the actual sale are not provided, the affidavit asserts that the previous day the informant stated that he or she had met someone who had said that she could introduce the informant to James Hillard and that the informant would attempt to meet Hillard. The purchase was thus consistent with the prior plans which the investigators had made with the informant. Moreover, the affidavit sets forth that the informant turned over several glassine envelopes which were analyzed and determined to be heroin. While it may be true, as defendants suggest, that the informant actually obtained the heroin from someone else, there was sufficient basis contained in the affidavit for concluding, at least for probable cause purposes, that, as the informant stated, the heroin was obtained from James Hillard. The affidavit need not be read in the grudging manner which defendants propose. *United States v. Ventresca, supra* 380 U.S. at 108–109, 85 S.Ct. 741, 745–46.

■ Similarly, defendants' argument that the Informants A and B's statements that Zigler got the purchased heroin from Hillard do not support the conclusion that Hillard was involved in the sale defies common sense. Although the affidavit does not specify that Zigler told the informants that he obtained the heroin from Hillard, it remains the fact that the investigators themselves observed Zigler meeting with Hillard after the informants requested Zigler to provide them with heroin and that Zigler returned with the heroin after meeting with Hillard. Regardless of whether this evidence would support the conclusion that Hillard was involved in the sale beyond reasonable doubt, it does support a finding under the lower standard of probable cause. "Judges are not required to exhibit a naivete from which ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977).

■ Defendants also contend that the heroin sales involving Hillard do not support the determination of probable cause for the warrant because the information was stale and in any event do not establish a continuing distribution operation, as distinct from isolated sales. However, where the warrant application discloses a picture of continuing conduct or ongoing activity, the lapse of time between particular illegal transactions and the warrant application becomes less significant. *Mapp v. Warden*, 531 F.2d 1167, 1171–72 (2d Cir.), *cert. denied* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976); *United States v. Martino*, 664 F.2d at 867; *United States v. Perry, supra.* Here the investigators' independent surveillance and inquiry served both to update the information provided by the sales recited in the affidavit and to provide information leading to the conclusion that Hillard was involved in a large scale heroin operation for which his telephone was probably used. The surveillance disclosed that Hillard associated frequently and regularly with known and suspected heroin dealers, and included recent information in this regard. While insufficient standing alone to support a finding of probable cause, this pattern of

association and occasional transfers of packages is properly considered as a relevant element determining the existence of probable cause. *United States v. Todisco*, 667 F.2d 255 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *United States v. Oates*, 560 F.2d 45, 59–60 (2d Cir. 1977). Moreover, the affidavit detailed enormous cash expenditures made by Hillard (and others in contact with him) far in excess of any apparent access to legitimate income. These facts provided at least circumstantial evidence of an ongoing narcotics operation, *see United States v. Gomez*, 633 F.2d 999, 1009 (2d Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981); *United States v. Viserto*, 596 F.2d 531, 536 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979), and suggested that the sales to informants were not isolated but rather were part of a larger and ongoing operation. Furthermore, the affidavit revealed that James Hillard had falsified lease applications, had used several different automobiles, had paid rent on several different premises, all of which contained extensive locks on the doors, and had used telephones listed in other persons' names, all of which were actions consistent with the operation of a large scale narcotics distribution operation. Finally, the telephone pen registers and the toll analysis described in the affidavit revealed a large number of collect telephone calls from the area in which the investigators observed Hillard and the others meeting and in which all their information had indicated that the distribution network was focused. The pen registers indicated calls at all hours to and from known and suspected heroin traffickers.

 No authority has been presented on the precise issue of the weight to be accorded conclusory informant statements for which no factual basis is given when the statements are corroborated by independent evidence. We conclude that the statements are entitled to some weight in such circumstances. In sum, while to the extent that the informants' statements are conclusory, they do not standing alone, support the warrant, the New Jersey affidavit did contain sufficient independent information so that, in its totality, it did establish probable cause. Since the New Jersey application was sufficient, the federal affidavits, containing all the information included in the New Jersey application as well as supplementary material are clearly sufficient. Accordingly, defendants' motion to suppress evidence as a result of the wiretaps and bugs is denied.

## V.

The primary argument advanced by defendants in their challenge to the physical searches conducted of various premises is that the search warrants were based on essentially the same information as the wiretap application, with the addition of excerpts from intercepted conversations, and therefore also did not establish probable cause. In light of our determination that the wiretap applications established probable cause, this argument is without merit.[4]

 In addition, the defendants contend that the particular warrant for the search of the apartment at 41 Convent Avenue, # 3–N, New York, New York, was not supported by probable cause. The contention is unpersuasive. The affidavits presented in support of that warrant application established probable cause to believe that James Hillard and others, including Robert Allen, were involved in a heroin distribution conspiracy using various apartments as pick-up and delivery points and as narcotics storage and/or preparation sites. The affidavits also established that on occasion, the members of the conspiracy exchanged keys to the various premises. In particular, the wiretap revealed a meeting

---

4. Richard Lewis also suggests that the search of his apartment after his arrest was tainted because the agents saw and smelled marijuana at the apartment when they arrested him and only then decided to seek a search warrant, yet failed to mention the marijuana in the application for the warrant. However, the affidavit of Special Agent John S. Fernandes at page 2, ¶ 3, includes the information concerning marijuana. Lewis' argument is therefore without merit.

planned to exchange keys on January 8, 1982, at "the other place." (Government Ex. VI, ¶ 2). Agents then observed Allen go to 1726 Davidson Avenue, Bronx, New York. A subsequent search of that address on February 11, 1982, found some 6 kilograms of heroin and dilutants, as well as paraphernalia. Also on January 8th, James Hillard called Allen and asked if Allen had "the keys to Convent, too." *(Id.)* When Allen had been arrested in December, 1980 (on unrelated charges) he had given his address as 41 Convent Avenue, New York, New York. When he was arrested on February 11, 1982, he was shown a set of keys which had been found in the premises at 20–J Grand Concourse and was asked which were the keys to Convent and which were the keys to Davidson. The set of keys Allen identified as belonging to Convent were found to fit in the lock at Apartment 3–N in the building at 41 Convent Avenue. In these circumstances, considering the context for the exchange of keys to "Convent" provided by the earlier exchange of keys to what was found to be a major storage and preparation facility, and the connection of the Convent apartment to the alleged conspiracy provided by the fact that Allen listed the building as his address, identified the keys, and the keys themselves had been found in the apartment which the affidavits provide reason for believing was the headquarters of the entire operation, it must be concluded that there was probable cause at the time the warrant was issued for believing that the apartment was being used for illegal purposes and would contain evidence of the alleged conspiracy.

The defendants also contend that the agents' entry into the apartment at Convent Avenue when they were testing the keys in the various doors of the building and before they had obtained a search warrant violated the Fourth Amendment. The government responds that it is prepared to show that the entry was justified under *United States v. Agapito*, 620 F.2d 324, 336 n.18 (2d Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980), on the agents' reasonable belief that third persons inside the premises might destroy evidence,

escape, or jeopardize the public safety. However, as the government notes, this issue need not be reached in the present case because there is no dispute that the search and seizure of evidence occurred after the search warrant was obtained. *United States v. Segura*, 663 F.2d 411, 414 (2d Cir. 1981); *United States v. Agapito, supra* at 338.

\* \* \* \* \* \*

Defendants' motion to suppress evidence obtained pursuant to wiretaps, bugs and searches authorized by warrant is denied.

It is so ordered.